Meredith Holley
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
  Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| LISA WILLIAMS and ANGELA PIERCE, <br> Plaintiffs, <br><br><br> vs. <br><br><br> CMH MANUFACTURING WEST, INC., dba CLAYTON HERMISTON and MARLETTE HOMES, a foreign corporation; HILARIO AVILA, individually; and TAMMY PROA, individually, <br> Defendants. | Case No.  2:21-cv-01065 <br><br> COMPLAINT <br> (Hostile Work Environment Sexual Harassment, Race-Based Discrimination, Wrongful Termination, Whistleblower Retaliation, 42 U.S.C § 2000e *et seq*. and Oregon law) <br><br><br> *Demand for Jury Trial* |

**INTRODUCTION**

1.

On June 25, 1944, the Oregon territory's provisional government enacted its "Lash Law," requiring that Black people, whether enslaved or free, be whipped every six months "until he or she shall quit the territory."

COMPLAINT – Page 1

2.

One of the earliest official documents from the Oregon territory was an Act titled "An Act to Prevent Negroes and Mulattoes from Coming to, or Residing in Oregon," passed on September 26, 1849.

3.

On February 14, 1859, Oregon became the only state that entered the United States with a clause in its constitution forbidding Black people to live in its borders. It was not until 2001 that this clause was officially repealed.

4.

Oregon's history of exclusion and violence towards all people of color is long and well-documented, but Oregon has specifically targeted Black people with discrimination, harassment, and violence with the result that according to a 2010 census, Black people make up only 0.8% of the population in Hermiston, Oregon (2.2% of Oregon's overall population). While subject to their own history of violence and discrimination, by contrast, according to the 2010 census, the Latinx community makes up 34.9% of the population of Hermiston, Oregon (13.4% of Oregon's overall population).

5.

Plaintiffs Lisa Williams and Angela Pierce are two members of the Black population in Hermiston, Oregon. Ms. Williams and Ms. Pierce are twin sisters, who, from 2018 through 2020, worked in different departments of Defendant CMH, a large manufacturer of modular homes in Hermiston. Often they were the only Black people working for Defendant CMH.

6.

Defendant CMH and Ms. Williams' managers, Defendants Avila and Proa subjected Ms. Williams to sexual harassment and race-based discrimination, assigning her a disproportionate workload compared to her non-Black coworkers, and writing her up for not being a "team player" when she opposed and reported the harassment and discrimination.

7.

While they worked for Defendant CMH, Ms. Williams and Ms. Pierce heard and saw the word "nigger" used in their environment, saw swastika symbols in the bathroom of Defendant, and were subject to physical assault and other dangers.

8.

When Ms. Pierce tried to intervene and help Ms. Williams in opposing the discrimination and harassment, Defendant CMH fired Ms. Pierce. It later fired Ms. Williams as well.

### JURISDICTION AND VENUE

9.

This matter arises under federal law, 42 U.S.C. 2000e. Supplemental jurisdiction over related state law claims is proper under 28 U.S.C. § 1367.

10.

The events underlying Plaintiff's claims took place in Umatilla County, Oregon, making venue proper in the District of Oregon, Pendleton Division.

**PARTIES**

11.

Plaintiff Lisa Williams is a resident of Umatilla County, Oregon. Ms. Williams is a Black woman. Beginning in August 2018, Ms. Williams was the only Black person in her department at Defendant CMH.

12.

Angela Pierce is a resident of Umatilla County, Oregon. Ms. Pierce is a Black woman. At all times relevant to this Complaint, Ms. Pierce was the only Black person in her department at Defendant CMH. Ms. Pierce and Ms. Williams are twin sisters.

13.

Defendant CMH Manufacturing West, Inc., dba Clayton Hermiston, dba Marlette Homes (Defendant CMH) is a foreign business corporation with a principal place of business in Maryville, Tennessee. Defendant CMH is in the business of building and selling manufactured and modular homes in Hermiston, Umatilla County, Oregon.

14.

Upon information and belief, Defendant Hilario Avila (Defendant Avila) is a resident of Umatilla County, Oregon. At all times relevant to this Complaint, Defendant Avila was Lisa Williams' supervisor. He is a Latinx man.

15.

Upon information and Defendant Tammy Proa (Defendant Proa) is a resident of Umatilla County, Oregon. At all times relevant to this Complaint, Defendant Proa was Assistant Lead in Lisa Williams' department. She is a white woman.

COMPLAINT – Page 4

### FACTUAL ALLEGATIONS

16.

On April 30, 2018, Defendant CMH hired Ms. Williams to work in its "final building" department.

17.

On June 11, 2018, Defendant CMH hired Plaintiff Angela Pierce as janitorial staff. As part of her job, she worked with many chemicals, which were stored with mops in a closet. She was the primary employee assigned to work in that closet.

18.

Defendant CMH has a policy of retaliating against victims of harassment or discrimination if they are afraid to report harassment right away or confused about what constitutes harassment. The policy states, "If you believe you are the victim of harassment, or if you have witnessed any perceived incidents of workplace harassment, you are required to report the episode immediately, preferably in writing. You should report first to your immediate supervisor or manager. … The failure to report harassment is a violation of the Company's policy."

19.

As soon as Ms. Williams started in the "finish" department, Defendant Avila began assigning her a workload that was more difficult than her non-Black coworkers. Defendant Avila's team was in charge of completing work on mobile homes and cleaning them. Work on completing a mobile home was not all the same. For example, completing work on a living room was quite simple, while completing work on a bedroom was more complicated involving working on window trim and closets. Defendant Avila began assigning Ms. Williams multiple bedrooms with every job. At first, Ms. Williams simply tried to comply with what

COMPLAINT – Page 5

was expected of her, but soon a white coworker pointed out that she was being treated differently and tried to help her. Ms. Williams began to wonder if Defendant Avila was treating her differently because of her race.

20.

Around June 2018, a man named Gustavo Mendoza, who is Latinx like Defendant Avila, began working in Ms. Williams' department as a cleaner.

21.

Right away, Mendoza started making sexually harassing comments. For example, within two weeks of being hired, Mendoza said to Ms. Williams, "If I give you $100, will you lie down and spread your legs?" Ms. Williams reported this incident to Defendant Avila, and he did nothing.

22.

On June 28, 2018, Ms. Williams asked Mendoza to pass her a caulking gun. He said, "Oh you want my cock?" Ms. Williams said, "Hell no! Don't ever come at me in any way again." He began to get aggressive and said threateningly, "You need some cock!" Ms. Williams reported this incident to Defendant Avila, and he did nothing.

23.

Approximately 8 times Ms. Williams saw Mendoza grab his crotch while referring to caulking, to make the point that he was talking about his penis.

24.

Throughout Ms. Williams' employment, female coworkers called Defendant Avila "Daddy." Ms. Williams did not call Defendant Avila "Daddy."

25.

Around July 2018, Ms. Williams reported to Defendant Avila that she believed he was treating her differently than her non-Black coworkers, saying, "You don't like me 'cause I don't call you 'daddy' or 'cause I'm the black sheep of your flock," referencing that she was the only Black person working for him.

26.

Beginning approximately once per week, until it became close to every night, Ms. Williams went home from work and cried, telling Ms. Pierce about the harassment she was experiencing and how she was treated differently than her non-Black coworkers. Ms. Pierce was devastated to hear her sister talk about the discrimination she was experiencing and how her supervisors ignored her complaints.

27.

Around September 2018, Ms. Pierce went into work and found that the mop heads she used were brown, dirty and smelling like feces, even though she had bleached and cleaned them the night before. About every other week, Ms. Pierce started to find her mop heads brown and smelling of feces. Sometimes, it would happen every other day, and other times it would not happen for over a month. It happened throughout her employment with Defendant CMH until around the summer of 2020.

28.

Beginning in September 2018 Ms. Pierce reported to Defendant CMH's General Manager Tom Shimp that after cleaning mop heads every day before leaving, she came in the next morning to find them dirty again. GM Shimp said that he would

look into it, but Ms. Pierce did not hear back from him. She continued to report incidents when they happened throughout her employment.

29.

Also in 2018, Ms. Pierce was cleaning a restroom and saw the word "nigger" written on the bathroom stall wall, as well as a swastika that was drawn as big as the wall itself. At that point, Ms. Pierce and Ms. Williams were the only Black people working at Defendant CMH, and this seemed specifically targeted at them. Ms. Pierce reported this to Defendant CMH's management. To her knowledge, no one was disciplined for this incident.

30.

Throughout their time working for Defendant CMH, Plaintiffs attending a morning meeting for all staff. Beginning in early 2019, a white man sat near the sisters during the meeting and stared at them in an intimidating way throughout the meeting. He did not stare at their non-Black coworkers. Ms. Williams and Ms. Pierce reported to Program Manager Andrew Timpy that they were uncomfortable with this man staring at them during the meeting. Manager Timpy did not help them, but told them they could just move seats if they were uncomfortable.

31.

Around June 2019, Ms. Pierce picked up a bottle of bleach from her storage closet and noticed immediately that it was almost boiling hot to the touch and that the bottle was dangerously expanding as if it was going to explode. She reported the dangerous chemical incident to Jeff Williams, a manager at that time for Defendant CMH, and he ordered a lock for the storage closet door. Ms. Pierce was given a key for this closet as was her manager, Darren Broderick.

COMPLAINT – Page 8

32.

Around September 10, 2019, Ms. Williams was working outside of a manufactured home, bending over to pick something up. She saw Gustavo inside of the home sweeping. Suddenly, he swept a pile of dust and debris into Ms. Williams' face. Ms. Williams believes he did this because she is a woman who refused his sexual advances and reported him. Ms. Williams reported this incident to Defendant Avila, and nothing happened.

33.

Ms. Williams has reported Gustavo to Defendant Avila or Defendant Proa more than 20 times. Nothing changed except that it seemed like Gustavo became angrier and more abusive towards Ms. Williams.

34.

In early March 2020, Ms. Williams overheard Defendants Avila and Proa talking outside. Defendant Avila said that Ms. Williams had complained to another supervisor that she was being given an unfair amount of work compared to her non-Black coworkers. Defendant Proa responded, "That fucking lying ass nigger."

35.

Around May 2020, Ms. Pierce took a mop head, bleached and cleaned it, and then hid it so that she could use it the next day. She always also left a mop in the women's bathroom in case any incident happened in the bathrooms. The next day, she went to find her mop head, grabbed it with her hands to pull it out of where she had hidden it, and found it brown and smelling like feces. Ms. Pierce's coworker, Dave Campana admitted to making the mop head dirty and laughed at Ms. Pierce for her concern. Until around summer 2020, the mops in the storage

closet continued to be dirty on mornings Ms. Pierce knew she had left them clean in the locked storage closet.

36.

In the summer of 2020, Ms. Pierce discovered that the key she thought her supervisor kept hidden was in a place where any employee could have access to it.

37.

Also in the summer of 2020, Defendant Avila got into an altercation with another employee, yelling obscenities at each other and almost coming to blows. Upon information and belief neither employee was disciplined or fired for the incident. Obscenities and altercations were commonplace at Defendant CMH.

38.

Also in the summer of 2020, Gustavo Mendoza got into a physical fight with a coworkers. Ms. Williams reported this to Defendant Avila, but Defendant Avila did not respond to the problem.

39.

On June 3, 2020, a white coworker asked if Ms. Williams would like to switch rooms in a manufactured home they were working on. It was a common practice to switch rooms. Defendant Avila gave Ms. Williams a formal writeup for being in the wrong room but did not write up her white coworker with whom she had switched rooms.

40.

On August 5, 2020, Ms. Williams told Defendant Proa that she believed she was being assigned a disproportionate amount of work. Defendant Proa became very angry, yelled and cursed at Ms. Williams, and slammed a door as she was leaving.

COMPLAINT – Page 10

41.

On August 6, 2020, Defendant Avila gave Ms. Williams a formal writeup for not being a "team player." He said Ms. Williams was argumentative and insubordinate to her manager for saying she was assigned a disproportionate amount of work.

42.

Later that day, Defendant Avila and HR Coordinator Erinn Gailey-Genack made Ms. Williams meet with them in a conference room. They again said that Ms. Williams' complaints were making her insubordinate. They accused her of not doing work on the Tuesday before. Defendant Avila had instructed her and her white coworker not to do that work. They did not discipline Ms. Williams's white coworker. Ms. Williams started crying. She asked them, if not doing the work was a problem, why they only targeted her. They did not answer. The HR Coordinator just said very loudly, "Lisa! This is the way it is! This write up stands the way it is!"

43.

Ms. Williams' sister, Ms. Pierce, saw Ms. Williams crying in the conference room because Ms. Pierce was outside of that room mopping the floor. She knew Ms. Williams had reported the discrimination she was experiencing and became concerned. She opened the conference room door to see if Ms. Williams was safe and to support her. The administrators who were reprimanding Ms. Williams immediately tried to exclude Ms. Pierce from the room and prevent her from supporting Ms. Williams.

COMPLAINT – Page 11

44.

Manager Andrew Timpy's office was near the conference room, and Ms. Pierce said to him, "Could I ask you a question?" Timpy said, "Sure." Ms. Pierce asked, "Why is it Lori is never written up when she works with [Ms. Williams]? Is it because [Ms. Williams'] Black and Lori's white? They are a team who do the same work together." Ms. Williams and Lori work side-by-side every day. Manager Timpy said, "I can't discuss this with you." The administrators did not otherwise respond and continued to try to interfere with her supporting Ms. Williams, telling her to leave, and she did as he asked.

45.

Soon after, Ms. Pierce heard her sister start uncontrollably crying in the conference room. Ms. Pierce saw Defendant Avila grinning, and it looked like the HR Coordinator was talking very aggressively to Ms. Williams. Ms. Pierce was afraid for her sister. She opened the door to protect her, and said to her, "They don't care. This is some racist shit." Ms. Pierce took her sister by the arm to protect her and get her out of that room.

46.

HR Coordinator suspended Ms. Williams and Ms. Pierce for the rest of the day. Ms. Pierce was shocked, and said, "What?" The HR Coordinator walked towards Ms. Pierce with her finger pointing at her aggressively. Ms. Pierce said, "Fuck you."

47.

Manager Timpy then told Ms. Pierce to wait outside, and she did. He came out soon after, took Ms. Pierce's keys, and told her not to return to work. Ms. Pierce has seen white coworkers use curse words without being disciplined or

COMPLAINT – Page 12

terminated. Ms. Pierce believes that she was fired in retaliation for opposing racism. Ms. Pierce is not aware of another non-Black employee who has been fired for using an obscenity at Defendant CMH.

48.

Defendant Martlette fired Ms. Pierce that same day and sent her a letter dated August 7, 2020, confirming the termination. It said it was firing Ms. Pierce for coming in the room where Ms. Williams was and saying "what was happening was unfair."

49.

After Ms. Williams' sister was fired for supporting her in her discrimination claim, Ms. Williams was even more afraid at work. She as seen white coworkers use curse words towards each other or towards her and not be reprimanded or disciplined for it.

50.

On August 7, 2020, Defendant Avila took Ms. Williams' personnel records and put them out in the open, on top her coworkers' pay stubs, knowing that all of her coworkers could see her reprimand and other records. He then left them unattended. Ms. Williams has never seen a supervisor do this to another worker, and this appeared to be another way to retaliate against her.

51.

On August 8, 2020, Ms. Williams sent a letter to corporate reporting what she was experiencing.

52.

On August 10, 2020, HR Coordinator Gailey-Genack and Respondent's General Manager Tom Shimp told Ms. Williams to meet with them and to not make any

COMPLAINT – Page 13

more complaints to corporate. Ms. Williams complained about Defendant Avila having exposed her personnel records to their department and having done nothing about Gustavo. Defendant CMH again took no action about Ms. Williams' complaint. General Manager Shimp told Ms. Williams, "Don't muddy the waters."

53.

On August 18, 2020, Ms. Williams was working outside of a manufactured home and saw Gustavo walking towards her. As he got close, he suddenly slammed himself against Ms. Williams, pinching her left breast so hard that it developed a bruise later. Ms. Williams immediately told him to never to put his hands on her again and he ignored her.

54.

Ms. Williams went right away to a coworker and asked her to radio Defendant Avila and Defendant Assistant Lead Tammy. They did not respond. A few minutes later, Ms. Williams saw Hilario laughing and talking with Gustavo. Ms. Williams reported what happened to Manager Timpy and GM Shimp. Later, a coworker named Ashlee Crane approached Ms. Williams and told her that she and two other female coworkers had reported Gustavo in the past and nothing had happened. "They won't do anything," she said.

55.

On September 1, 2020, HR Coordinator Gailey-Genack and GM Shimp formally reprimanded Ms. Williams for complaining to corporate, telling her that she was on a last-chance agreement and saying, "You will also not send any more letters or complaints to Home Office unless it [is] a new or different issue." To Ms. Williams' knowledge, Defendant Marlette has taken no action regarding her

complaints of sexual harassment or race-based discrimination but has punished her instead.

56.

Defendant Avila continued to target Ms. Williams with different work expectations than her coworkers. For example, on September 10, 2020, he told her that she needed to paint all patches where walls had been textured, sweep, and mop a 144 square foot space by 10am, and that no one was allowed to help her. He does not hold her white coworker to that standard, and they had worked the same room in teams.

57.

On September 11, 2020, Defendant Avila told Ms. Williams to clean a set of flags. This meant to repair, clean, paint, or fix areas that Hilario had marked with red tape. Ms. Williams told him she had looked for flags and they were not there. Defendant Avila became very angry and started yelling at Ms. Williams. Ms. Williams told him, "I am not enslaved to you" because she felt he was threatening her. Ms. Williams was afraid of him. He said, "You work for me! Get over there and do it right now" in an intimidating way.

58.

Ms. Williams told a white coworker what had happened, and the coworker told her that Defendant Avila had instructed her not to help her. It seemed to Ms. Williams like Hilario was looking for a reason to fire her.

59.

Later on September 11, 2020, Defendant CMH terminated Ms. Williams' employment.

60.

On September 18, 2020, Ms. Williams and Ms. Pierce filed claims with Oregon

Bureau of Labor and Industries (BOLI) and Equal Employment Opportunity

Commission based on the facts alleged above.

61.

On June 2, 2021, the Oregon Bureau of Labor and Industries issued both Plaintiffs

90-day right to sue letters.

### CLAIMS FOR RELIEF FOR PLAINTIFF LISA WILLIAMS

### First Claim for Relief (Williams) – Title VII
### Hostile Work Environment Sexual Harassment
### (Against Defendant CMH)

62.

Plaintiffs repeat and reallege paragraphs 1-61 as though fully set forth.

63.

Defendant CMH violated Title VII of the Civil Rights Act of 1964, 42 USC §

2000e, *et seq.,* by subjecting Plaintiff Williams to unwanted, offensive verbal or

physical conduct based on Plaintiff's sex as described above, which was severe or

pervasive enough to alter the conditions of Plaintiff's employment and create a

work environment that a reasonable person in Plaintiff's circumstances would

consider to be abusive or hostile enough to alter the conditions of Plaintiff's

employment. Plaintiff perceived the environment to be abusive or hostile.

Defendant CMH and/or members of Defendant's management knew or should

have known of the harassment and failed to take immediate, appropriate remedial

action reasonably calculated to end the harassment as described above, which

culminated in Defendants disciplining Plaintiff, instructing her to stop reporting the harassment to corporate offices, and ultimately firing Plaintiff.

64.

Defendant's violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at reporting sexual harassment and receiving retaliation instead of support from Defendant CMH, compensation for which is to be determined by a jury at trial.

65.

Under Title VII, 42 U.S.C. 2000e-2, Plaintiff is entitled to reasonable attorney fees and costs to be determined by the court.

**Second Claim for Relief (Williams) – ORS 659A.030**
**Hostile Work Environment Sexual Harassment**
**(Against Defendant CMH)**

66.

Plaintiffs repeat and reallege paragraphs 1-65 as though fully set forth.

67.

Defendant CMH violated ORS 659A.030, by subjecting Plaintiff Williams to unwanted, offensive verbal or physical conduct based on Plaintiff's sex as described above, which was severe or pervasive enough to alter the conditions of Plaintiff's employment and create a work environment that a reasonable person in Plaintiff's circumstances would consider to be abusive or hostile enough to alter the conditions of Plaintiff's employment. Plaintiff perceived the environment to be abusive or hostile and opposed the sexual harassment. Defendant CMH and/or members of Defendant's management knew or should have known of the harassment and failed to take immediate, appropriate remedial action reasonably

COMPLAINT – Page 17

calculated to end the harassment as described above, which culminated in Defendants disciplining Plaintiff, instructing her to stop reporting the harassment to corporate offices, and ultimately firing Plaintiff.

68.

Defendant's violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at reporting sexual harassment and receiving retaliation instead of support from Defendant CMH, compensation for which is to be determined by a jury at trial.

69.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

**Third Claim for Relief (Williams) – Title VII**
**Hostile Work Environment – Race-Based Harassment**
**(Against Defendant CMH)**

70.

Plaintiffs repeat and reallege paragraphs 1-69 as though fully set forth.

71.

Defendant CMH violated Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.,* by subjecting Plaintiff Williams to unwanted, offensive verbal or physical conduct based on Plaintiff's race as described above, including subjecting her to racial slurs, less favorable working conditions than her non-Black coworkers, and discipline, which was severe or pervasive enough to alter the conditions of Plaintiff's employment and create a work environment that a reasonable person in Plaintiff's circumstances would consider to be abusive or hostile enough to alter the conditions of Plaintiff's employment. Plaintiff

COMPLAINT – Page 18

perceived the environment to be abusive or hostile. Defendant CMH and/or members of Defendant's management knew or should have known of the harassment and failed to take immediate, appropriate remedial action reasonably calculated to end the harassment as described above, which culminated in Defendants disciplining Plaintiff, instructing her to stop reporting the harassment to corporate offices, and ultimately firing Plaintiff.

72.

Defendant's violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at reporting she was being treated differently in her work because of her race and receiving retaliation instead of support from Defendant CMH, compensation for which is to be determined by a jury at trial.

73.

Under Title VII, 42 U.S.C. 2000e-2, Plaintiff is entitled to reasonable attorney fees and costs to be determined by the court.

**Fourth Claim for Relief (Williams) – ORS 659A.030
Hostile Work Environment – Race-Based Harassment
(Against Defendant CMH)**

74.

Plaintiffs repeat and reallege paragraphs 1-73 as though fully set forth.

75.

Defendant CMH violated ORS 659A.030 by subjecting Plaintiff Williams to unwanted, offensive verbal or physical conduct based on Plaintiff's race as described above, including subjecting her to racial slurs, less favorable working conditions than her non-Black coworkers, and discipline, which was severe or

COMPLAINT – Page 19

pervasive enough to alter the conditions of Plaintiff's employment and create a work environment that a reasonable person in Plaintiff's circumstances would consider to be abusive or hostile enough to alter the conditions of Plaintiff's employment. Plaintiff perceived the environment to be abusive or hostile. Defendant CMH and/or members of Defendant's management knew or should have known of the harassment and failed to take immediate, appropriate remedial action reasonably calculated to end the harassment as described above, which culminated in Defendants disciplining Plaintiff, instructing her to stop reporting the harassment to corporate offices, and ultimately firing Plaintiff.

76.

Defendant's violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at reporting she was being treated differently in her work because of her race and receiving retaliation instead of support from Defendant CMH, compensation for which is to be determined by a jury at trial.

77.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

### Fifth Claim for Relief (Williams) – ORS 659A.199
### Whistleblower Retaliation
### (Against Defendant CMH)

78.

Plaintiffs repeat and reallege paragraphs 1-77 as though fully set forth.

COMPLAINT – Page 20

79.

Defendant CMH violated ORS 659A.199 by retaliating against Plaintiff Williams for good faith reports of a violation of law, rule, or regulation including that after Plaintiff reported sexual harassment and race-based discrimination, Defendant's management described Plaintiff using a racial slur and Defendant disciplined Plaintiff for not being a "team player," instructed her not to report to the corporate offices, and ultimately terminated Plaintiff.

80.

Defendant's violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at making good faith reports of violations of law, rule or regulation and receiving retaliation instead of support from Defendant CMH, compensation for which is to be determined by a jury at trial.

81.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

**Sixth Claim for Relief (Williams) – ORS 659A.030**
**Aider and Abettor**
**(Against Defendants Avila and Proa)**

82.

Plaintiffs repeat and reallege paragraphs 1-81 as though fully set forth.

83.

Defendants Avila and Proa violated ORS 659A.030 by aiding, abetting, inciting, compelling, or coercing Defendant CMH and its employees to harass and

discriminate against Plaintiff Williams because of her sex and/or race in one or more of the following:

    a)  In refusing to to respond to reports of sexual harassment, emboldening Gustavo Mendoza to continue to sexually harass female employees including Plaintiff Williams;

    b)  In assigning Plaintiff Williams more work than her non-Black colleagues;

    c)  In assigning Plaintiff Williams less favorable work than her non-Black colleagues;

    d)  In Defendant Proa using a racial slur regarding Plaintiff Williams;

    e)  In Defendant Avila failing to discipline or correct Defendant Proa for using a racial slur regarding Plaintiff Williams;

    f)  In disciplining Plaintiff Williams because of her reports of harassment and discrimination; and/or

    g)  In ultimately terminating Plaintiff Williams because of her reports of harassment and discrimination.

84.

Defendants' violations have caused and continue to cause Plaintiff Williams financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at having her supervisors aid, abet, incite, compel, or coerce harassment and discrimination and retaliate against Plaintiff rather than supporting her, compensation for which is to be determined by a jury at trial.

85.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

COMPLAINT – Page 22

**CLAIMS FOR RELIEF FOR PLAINTIFF ANGELA PIERCE**

**Seventh Claim for Relief (Pierce) – Title VII**
**Wrongful Termination**
**(Against Defendant CMH)**

86.

Plaintiffs repeat and reallege paragraphs 1-85 as though fully set forth.

87.

Defendant CMH violated Title VII of the Civil Rights Act of 1964, 42 USC §

2000e, *et seq.,* by terminating Plaintiff Pierce because she is Black and/or because

she attempted to oppose race-based discrimination at Defendant CMH.

88.

Defendant's termination of Plaintiff Pierce has caused and continue to cause

Plaintiff Pierce financial and non-financial harms including wage loss,

humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at

being fired because of her race or because she attempted to stop race-based

discrimination, compensation for which is to be determined by a jury at trial.

89.

Under Title VII, 42 U.S.C. 2000e-2, Plaintiff is entitled to reasonable attorney

fees and costs to be determined by the court.

**Eighth Claim for Relief (Pierce) – ORS 659A.030**
**Wrongful Termination**
**(Against Defendant CMH)**

90.

Plaintiffs repeat and reallege paragraphs 1-89 as though fully set forth.

COMPLAINT – Page 23

91.

Defendant CMH violated ORS 659A.030 by terminating Plaintiff Pierce because she is Black and/or because she attempted to oppose race-based discrimination at Defendant CMH.

92.

Defendant's termination of Plaintiff Pierce has caused and continue to cause Plaintiff Pierce financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at being fired because of her race or because she attempted to stop race-based discrimination, compensation for which is to be determined by a jury at trial.

93.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

**Fifth Claim for Relief (Pierce) – ORS 659A.199**
**Whistleblower Retaliation**
**(Against Defendant CMH)**

94.

Plaintiffs repeat and reallege paragraphs 1-93 as though fully set forth.

95.

Defendant CMH violated ORS 659A.199 by terminating Plaintiff Pierce because she made good faith reports of violation of law, rule, or regulation when she reported race-based discrimination at Defendant CMH.

96.

Defendant's termination of Plaintiff Pierce has caused and continue to cause Plaintiff Pierce financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at

COMPLAINT – Page 24

being fired because of her race or because she attempted to stop race-based discrimination, compensation for which is to be determined by a jury at trial.

97.

Plaintiff is entitled to prevailing party fees and reasonable attorney fees and costs under ORS 659A.885.

_____

WHEREFORE, Plaintiffs Lisa Williams and Angela Pierce pray for judgment against Defendants as follows:

a. Economic damages in the form of expenses and lost income in an amount to be determined at trial, and prejudgment interest thereon;

b. Fair and reasonable compensatory damages to be determined at the time of trial with prejudgment interest thereon;

c. Prevailing party fees and reasonable attorney fees and costs incurred herein under ORS 659A.885 and 42 U.S.C. 2000e-2; and

d. All relief deemed just and equitable by the court.

DATED this 19th day of July, 2021.

_____

Meredith Holley, OSB #125647
Meredith@ErisResolution.com
LAW OFFICE OF MEREDITH HOLLEY
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Telephone: (458) 221-2671
Fax: (833) 352-3615
Attorney for Plaintiff