IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| LISA WILLIAMS and ANGELA PIERCE, | No. 2:21-cv-01065-HL |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| CMH MANUFACTURING WEST, INC., dba CLAYTON HERMISTON and MARLETTE HOMES, a foreign corporation; HILARIO AVILA, individually; and TAMMY PROA, individually, | |
| Defendants. | |

HALLMAN, United States Magistrate Judge:

      Plaintiffs Lisa Williams and Angela Pierce bring this action against their former

employer, Defendant CMH Manufacturing West, Inc. ("CMH"), and two of its employees,

Hilario Avila and Tammy Proa ("Individual Defendants"), alleging violations of state and federal

Page 1 – FINDINGS AND RECOMMENDATION

law arising from alleged discrimination and harassment based on race and sex during Plaintiffs' employment. Defendants now seek to stay this matter and compel arbitration pursuant to separate employment dispute resolution agreements that Plaintiffs signed as a condition of their employment. ECF 9. The Court heard oral argument on this motion on November 29, 2021. ECF 17. For the following reasons, Defendants' motion should be granted, and the case should be dismissed without prejudice.

## BACKGROUND

Plaintiffs are two Black sisters who worked for CMH at its Clayton Hermiston manufacturing plant. Genack Decl. ¶ 4, 6, ECF 9-2; Williams Decl. ¶ 6, ECF 11; Pierce Decl. ¶ 4, ECF 12. Plaintiff Williams began working for CMH on April 30, 2018. *Id.* ¶ 4. On that date, Plaintiff Williams executed an Employment Dispute Resolution Agreement. *Id.* ¶ 5; Genack Decl. Ex. 1 ("Williams Agreement"), ECF 9-4. Plaintiff Pierce began working for CMH on June 11, 2018. Genack Decl. ¶ 6. On that date, Plaintiff Pierce also executed an Employment Dispute Resolution Agreement. *Id.* ¶ 7; Genack Decl. Ex. 2 ("Pierce Agreement"), ECF 9-5. Both the Williams Agreement and Pierce Agreement are identical. *Compare* Williams Agreement 1-5, *with* Pierce Agreement 1-5. The remainder of this Findings and Recommendation refers to both Employment Dispute Resolution Agreements collectively as the "agreements."

The agreements apply to "[a]ny controversy, claim or dispute that arises out of or relates to an employment application and/or employment with" CMH. Williams Agreement at 1; Pierce Agreement at 1. The agreements require "either party" to submit a dispute to mediation before proceeding to arbitration. Williams Agreement at 1-2; Pierce Agreement at 1-2. Any disputes covered by the agreements that are not resolved in mediation "will be determined by a neutral arbitrator and not a judge or jury." Williams Agreement at 2; Pierce Agreement at 2. The

agreements then specifically address the claims "against the Company/Employee [*i.e.*, CMH]" that are subject to binding arbitration, including (but not limited to) claims in tort, contract, and multiple categories of federal civil rights and employment law. Williams Agreement at 2; Pierce Agreement at 2. The agreements expressly exclude certain categories of claims that could be brought by the employer and/or employee. Williams Agreement at 2-3; Pierce Agreement at 2-3. Finally, the agreements further state in all capital letters, just above the signature line, that the employee *and* company "waive the right to have a dispute covered by this agreement decided by a court of law and/or by a jury in court." Williams Agreement at 5; Pierce Agreement at 5.

Plaintiffs allege that, as the only Black employees, they experienced various forms of racial discrimination and harassment while they worked at CMH. Williams Decl. ¶¶ 4-6; Pierce Decl. ¶ 4. Plaintiff Pierce was fired from CMH on August 6, 2020, Pierce Decl. ¶ 5, and Plaintiff Williams was fired from CMH on September 11, 2020. Williams Decl. ¶ 7.

Plaintiffs brought this action against CMH and two of its employees on July 19, 2021. Compl., ECF 1. Plaintiffs allege that they were subjected to racial discrimination, sexual harassment, retaliation, and other disparate and discriminatory treatment during the course of their employment, which culminated in their respective terminations. *Id*. ¶¶ 16-59; Pierce Decl. ¶ 5; Williams Decl. ¶ 7. Plaintiffs collectively assert eight claims for relief against Defendants: Plaintiff Williams brings claims for (1-4) hostile work environment sexual and race-based harassment against CMH under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and Or. Rev. Stat. ("ORS") § 659A.030; (5) whistleblower retaliation against CMH under ORS § 659A.199; and (6) aiding and abetting in harassment and discrimination against Individual Defendants under ORS § 659A.030. Compl. ¶¶ 62-85. Plaintiff Pierce also joins the fifth claim for whistleblower retaliation against CMH under ORS § 659A.199 and

Page 3 – FINDINGS AND RECOMMENDATION

asserts claims for (7-8) wrongful termination against CMH under Title VII and ORS § 659A.030; . *Id.* ¶¶ 86-97.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2 (2018). Courts may decline to enforce an arbitration agreement if grounds "exist at law or in equity for the revocation of any contract." *Id.* Otherwise, courts must place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Courts strongly favor arbitration and broadly construe arbitration clauses." *Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F. Supp. 3d 1143, 1147 (D. Or. 2020). "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

Under the FAA, when evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Section 2 of the FAA allows arbitration agreements to be invalidated by generally applicable contract defenses, such as duress or unconscionability, but not by defenses that only apply to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). When determining the validity of an agreement to arbitrate, the courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## ANALYSIS

Defendants seek to compel arbitration pursuant to the agreements. *See* Def. Mot. Stay & Compel Arbitration, ECF 9. The parties agree that the FAA applies to the agreements and that the agreements encompass the disputes in this proceeding. *Id.* at 7; Pl. Resp. Mot. Stay & Compel Arbitration ("Pl. Resp.") 6, ECF 10 ("Plaintiffs do not dispute that the Agreements Defendants have put forth encompass the disputes at issue in their cases."). Rather, Plaintiffs make three arguments in opposing Defendants' motion: Plaintiffs contend that (1) a valid agreement to arbitrate does not exist because there was no offer or consideration, so the agreements are not binding under Oregon law; (2) the agreements are procedurally and substantively unconscionable; and (3) Individual Defendants are not parties to the agreements, so the Court cannot compel arbitration of the claims against them. Additionally, in a supplemental pleading to the Court, Defendants seek a dismissal of this action if the Court finds that all claims are subject to arbitration. Suppl. Pleading Def. Mot. Stay & Compel Arbitration 2, ECF 18.

For the reasons discussed below, the Court finds Plaintiff's arguments unavailing. The agreements are valid, are not unconscionable, and encompass the claims at issue. Thus, the Court recommends granting Defendant's motion.

**I.      The agreements are binding under Oregon law.**

Plaintiffs assert that the agreements are unenforceable because they did not constitute binding contracts under Oregon law. Pl. Resp. 6. Plaintiffs argue that the agreements did not contain a valid offer because the agreements expressly disclaimed that they could be construed as an offer of employment. *Id.* at 7. Additionally, Plaintiffs contend that the agreements were not supported by valid consideration because Defendants "had no obligation under the agreements,"

Page 5 – FINDINGS AND RECOMMENDATION

so the agreements lacked mutuality. *Id.* at 7-9. Both arguments fail as a matter of Oregon law under the terms of the agreements.

To begin, "[a] contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moro v. State*, 357 Or. 167, 196 (2015). "Under Oregon law, a promise of continued employment for an 'at will' employee is valid consideration when the contract is expressly or impliedly made a condition of employment." *Noorzai v. Dabella Exteriors, LLC*, No. 3:15-CV-00045-PK, 2015 WL 5037669, at *4 (D. Or. Aug. 25, 2015) (citing *Yartzoff v. Democrat-Herald Pub. Co.*, 281 Or. 651, 657 (1978)); *McCombs v. McClelland*, 223 Or. 475, 483 (1960); *see also Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) ("Oregon courts do not require anything more than continued employment in consideration for signing an arbitration agreement."). Thus, the fact that the agreements were a condition of continued at-will employment satisfies the consideration element of contract formation for the agreements.

Additionally, the consideration was not deficient due to an alleged lack of mutuality. Consideration is defined as "'some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.'" *Homestyle Direct, LLC v. Dep't of Human Servs.*, 354 Or., 253, 262, 311 P.3d 487 (2013) (*quoting Shelley v. Portland Tug & Barge Co.*, 158 Or. 377, 387 (1938). It is unclear whether Oregon law requires that arbitration agreements be mutual to be supported by adequate consideration. A court in this district has noted that "under Oregon law, a mutual agreement to arbitrate is adequate consideration to enforce the Agreement." *Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) (citing *Noorzai*, 2015 WL 5037669, at *5 ("Reciprocal forbearance of the right to a judicial forum is valid consideration under Oregon

law.") (citing *Melton v. Phillip Morris Inc.*, 71 F. App'x 701, 703 (9th Cir. 2003)))).  However, the Oregon Court of Appeals has addressed mutuality in the context of unconscionability, not consideration.  *See Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 620–21 (2007) ("[I]t is possible for a contractual term to be supported by adequate consideration and yet still be so unreasonable as to be unconscionable."); *see also Siggelkow v. Nw. Grp., Inc.*, No. 3:18-CV-01494-HZ, 2019 WL 294759, at *9 (D. Or. Jan. 22, 2019) ("In Oregon, the presence of a non-mutual arbitration requirement is not *per se* unreasonable.").

This Court need not resolve that issue, however, because the agreements are mutual insofar as they impose some obligations—*e.g.*, mandatory mediation and mandatory arbitration—on both CMH and Plaintiffs with respect to claims brought by Plaintiffs relating to Plaintiffs' employment.  *See* Williams Agreement 1-3; Pierce Agreement 1-3.  The agreements require both Plaintiffs and CMH to first mediate Plaintiffs' claims and to then forego judicial remedies with respect to those claims.  The agreements also apply equally to claims that CMH might assert against Plaintiffs arising from their employment, albeit with some exclusions discussed below.  Accordingly, to the extent that some mutuality of consideration is required for an arbitration agreement, it is present in these agreements.  Any remaining arguments concerning the one-sided nature of these agreements go to unconscionability.

**II.     The agreements were not procedurally or substantively unconscionable.**

Plaintiffs next contend that the agreements are unenforceable because they are both procedurally and substantively unconscionable.  Pl. Resp. 10-13.  Plaintiffs argue that the agreements are procedurally unconscionable due to the unequal nature of the bargaining power between the parties, the take-it-or-leave-it nature of the agreements, the nature in which the agreements were signed, and the confusing legal language of the agreements.  *Id.* at 11-13.

Plaintiffs also assert that the agreements are substantively unconscionable because they are one-sided in favor of CMH. *Id.* at 13. Neither argument is availing.

"Unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (citing *Shroyer v. New Cingular Wireless Servs. Inc.*, 498 F.3d 976, 981 (9th Cir. 2007)). "[U]nconscionability is a question of law that must be determined based on the facts in existence at the time the contract was made." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007). The party asserting unconscionability bears the burden of proof. *Id.* "Under Oregon law, unconscionability is comprised of two components: procedural and substantive unconscionability. *Id.* Procedural unconscionability focuses on whether the contract creates oppression and unfair surprise, while substantive unconscionability focuses on the terms of the contract. *Gist v. ZoAn Mgmt.*, 305 Or. App. 708, 716, *rev. allowed*, 367 Or. 257 (2020). Although both forms are relevant to the analysis, "only substantive unconscionability is *absolutely necessary*" for a finding of unconscionability. *Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 567 (2007) (emphasis added)).[1]

---

[1] Plaintiffs argue that the agreements are unenforceable if they are *either* procedurally *or* substantively unconscionable. This Court disagrees and concludes that at least substantive unconscionability is an essential requirement. In *Vasquez-Lopez*, the Oregon Court of Appeals considered an "arbitration rider [that] was to some significant degree procedurally unconscionable" but concluded that "[b]y itself, that fact would not necessarily render the arbitration rider unenforceable." 210 Or. App. at 569. It concluded that Oregon law emphasizes substantive unconscionability and held that "[t]he substantive fairness of the challenged terms is always *an essential issue*." *Id.* (citing *Carey v. Lincoln Loan Co.*, 203 Or. App. 399, 423 (2005)) (emphasis added). Thus, Plaintiffs must demonstrate that the agreement is to some degree substantively unconscionable. *Compare Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 556 n.8 (2014) (expressly declining to resolve whether both procedural and substantive unconscionability is necessary to invalidate a contract), *with Escobar v. Nat'l Maint.*, No. 3:20-CV-01695-SB, 2021 WL 3572652, at *10 (D. Or. Aug. 12, 2021) ("[T]o render the Arbitration Agreement unconscionable, Plaintiffs must demonstrate substantive unconscionability.").

Page 8 – FINDINGS AND RECOMMENDATION

### a. Procedural Unconscionability

Procedural unconscionability concerns the conditions under which the contract was formed. *Id.* at 566. The analysis of procedural unconscionability has two prongs: oppression and surprise. *Tapley*, 448 F. Supp. 3d at 1149 (citing *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014)). "Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 151 (2010) (citing *Vasquez-Lopez*, 210 Or. App. at 566). "Surprise involves whether terms were hidden or obscure from the vantage of the party seeking to avoid them. Generally speaking, factors such as ambiguous contract wording and fine print are the hallmarks of surprise." *Bagley*, 356 Or. at 555.

Plaintiffs first argue that the agreements are oppressive because of the unequal bargaining power of the parties and the take-it-or-leave-it nature of the agreements. These facts are insufficient to establish that the agreements are oppressive. Oregon courts have consistently held that "more than a contract of adhesion and unequal bargaining power is required to void an arbitration [agreement]." *Tapley*, 448 F. Supp. 3d at 1149 (internal citations and quotations omitted).

Plaintiffs next argue that the agreements are procedurally unconscionable based on surprise: Neither Plaintiff recalls signing the agreements, and Plaintiffs allege that the agreements are written in confusing legal language. Williams Decl. ¶¶ 3, 10; Pierce Decl. ¶¶ 3, 6. Again, these arguments are insufficient to establish surprise. Whether Plaintiffs recall signing the agreements is not relevant. In Oregon, a party is "presumed to be familiar with the contents of any document that bears the person's signature." *Motsinger*, 211 Or. App. at 616-17. And the

agreements do not contain fine print or ambiguous wording, at least with respect to the core issue whether Plaintiffs' subsequent employment claims would be subject to arbitration. Accordingly, Plaintiffs cannot demonstrate that the agreements were procedurally unconscionable.

        **b.**        **Substantive Unconscionability**

"Substantive unconscionability concerns the terms of the contract and whether they conflict with public interest or policy." *Tapley*, 448 F. Supp. at 1150 (D. Or. 2020). Here, the only argument that Plaintiffs present regarding substantive unconscionability is the non-mutuality of the agreements.

In Oregon, the presence of a non-mutual arbitration agreement is not *per se* unreasonable. *Motsinger*, 211 Or. App. at 619-23. Instead, *Motsinger* instructs courts to focus on the effects of terms in an arbitration agreement. *Id*. *Motsinger* concluded that "an approach that focuses on the one-sided effect of an arbitration clause rather than on its one-sided application to evaluate substantive unconscionability is most consistent with the common law in Oregon regarding unconscionability of other kinds of contractual provisions and with state and federal policies regarding arbitration." *Id*. at 623. Thus, courts applying Oregon law must determine "whether, given the unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable." *Id.* at 625; *see also Siggelkow*, 2019 WL 294759, at *9.

Here, Plaintiffs offer little to demonstrate that the effect of the agreements make the parties' respective obligations unbalanced. Plaintiffs contend that the agreements "limit[] access to a jury of the Plaintiffs' peers." Pl. Resp. 13. But the waivers of the parties' rights to a jury trial are a key feature of these—or indeed any—arbitration agreements. Concluding that this key feature is unconscionable would run contrary the rule that courts strongly favor arbitration.

Page 10 – FINDINGS AND RECOMMENDATION

*Tapley*, 448 F. Supp. 3d at 1147.  As such, limited access to a jury trial is not a basis to find that the agreements are substantively unconscionable.

Plaintiffs next reassert that "the arbitration clause appears to be one-way, only limiting Plaintiffs' ability to have a jury hear their claims, but not limiting Defendants."  *Id.*  This Court has already rejected Plaintiffs' argument that the agreements are not mutual.  But that is not to say that the agreements are balanced.  The principal effect of the agreements is to require Plaintiffs—the employees—to submit their claims against CMH—the employer—to binding arbitration.  For that reason, the agreements specifically list the multitude of claims that an employee might commonly bring "against the Company/Employee," but the agreements do not do the same for claims that the employer might bring against an employee.  *See* Williams Agreement 1-2; Pierce Agreement 1.  And despite the agreements' application to claims by both employer and employee, the agreements exclude certain claims that would traditionally be brought by an employer against an employee, such as claims for injunctive relief related to trade secrets or violations of noncompete agreements.  *See* Williams Agreement 2-3; Pierce Agreement 2-3. Thus, the clear effect of these agreements is to require the Plaintiffs to arbitrate their claims against CMH in a forum that CMH would prefer.

Despite their one-sided nature, this Court does not find that the effect of the agreements is so unbalanced as to make them unconscionable.  Plaintiff fails to identify any other terms of the agreements that would make them unbalanced.  The agreements do not shorten the applicable limitations period or impose prohibitive arbitration costs of Plaintiffs.  *See, e.g.*, *Siggelkow*, 2019 WL 294759, at *10.  The agreements do not contain burdensome forum selection clauses.  *Escobar*, 2021 WL 3572652, at *10.  And the agreements do not impose "terms such as one-sided discovery, one-sided coverage, and the allocation of payment of the arbitration fees."

*Tapley*, 448 F. Supp. 3d at 1150. Thus, apart from the fact that the effect of these agreements is to require arbitration of Plaintiffs' claims in CMH's preferred forum, there are no other factors that demonstrate that the agreements are unbalanced, and the Court cannot conclude that they are substantively unconscionable.

**III.     The agreements apply to the Individual Defendants.**

Finally, Plaintiff Williams argues that Individual Defendants are not parties to the agreement and are not entitled to claim its benefits. Pl. Resp. 14. Plaintiff Williams asserts that the agreement only permits CMH to claim the benefit of the agreement, and that CMH "has not offered any evidence that [Individual Defendants] wish to waive the right to a jury trial in this case." *Id.* The Court disagrees.

The third-party beneficiary clause of the agreement states that the agreement "shall" apply to CMH's employees. Williams Agreement 4 ("The parties agree that the terms of this Agreement also shall apply to the Company/Employer's employees."). And even if, as Plaintiff argues, the term "may" indicates that Individual Defendants' inclusion is permissive, *see id.* ("[T]hird-party beneficiaries . . . may claim the full benefit of all provisions of this Agreement), Individual Defendants have asserted in this proceeding that they also seek to compel arbitration. Thus, the agreements apply to all parties, including Individual Defendants.

**IV.     The proper remedy is to dismiss without prejudice.**

Defendants initially moved to stay this case pending arbitration, but Defendants later asserted that the appropriate remedy in this case is a dismissal without prejudice. *See* Suppl. Pleading Def. Mot. Stay & Compel Arbitration 2. This Court agrees that dismissal without prejudice is the appropriate remedy. "Notwithstanding the language of [9 U.S.C.] § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all

of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014); *see also Blashishin v. Keystone Auto. Indus., Inc.*, No. 3:21-CV-00960-YY, 2021 WL 3503774, at *1 (D. Or. July 22, 2021), *report and recommendation adopted*, No. 3:21-CV-00960-YY, 2021 WL 3493476 (D. Or. Aug. 9, 2021). Here, because the parties agree that all Plaintiffs' claims are covered by the agreements, the Court should exercise its discretion to dismiss this case without prejudice.

## RECOMMENDATION

Based on the foregoing, this Court recommends that Defendants' Motion to Stay and Compel Arbitration be GRANTED, and this case should be DISMISSED WITHOUT PREJUDICE.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment

It is so ORDERED and DATED this 16th day of December, 2021.

_____
ANDREW HALLMAN
United States Magistrate Judge